STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPA-
NY, Appellant,

v.

Carlene SLUSHER, Administratrix of
the Estate of Donald Slusher,
Deceased, Appellee.

No. 2009–SC–000513–DG.

Supreme Court of Kentucky.

Nov. 18, 2010.

Circuit Court for dismissal of the Estate's claims against State Farm.

John Fredrick Vincent, Martin, Justice, Vincent & Lavender, Ashland, KY, Counsel for Appellant.

Samuel Girdner Davies, Barbourville, KY, Counsel for Appellee.

Opinion of the Court by Justice
VENTERS.

This case involves the right of a worker to recover under his personal policy of uninsured motorist protection (UM) and underinsured motorist protection (UIM) for uncompensated injuries sustained in a work-related motor vehicle accident caused by the negligence of a co-worker. Appellant, State Farm Mutual Automobile Insurance Company, appeals from an opinion of the Court of Appeals which upheld a determination by the Knox Circuit Court that Appellee, Carlene Slusher, Administratrix of the Estate of Donald Slusher, was entitled to collect under either the UM or UIM provisions of a motor vehicle insurance policy issued by State Farm to Appellee's decedent, Donald Slusher.[1] For reasons set forth below, we reverse the Court of Appeals, and remand to the Knox

## FACTUAL AND PROCEDURAL BACKGROUND

Donald Slusher and Arlie Napier were both working as truck drivers in the employ of James Long Trucking, which had a contract to haul refuse from a coal processing site in Bell County, Kentucky. After parking his truck, Donald was on duty, waiting for his next load in a concrete block structure located at the site. Meanwhile, Napier had parked his twenty-ton 1988 Mack haul truck uphill from, and facing, the concrete block building. According to investigators, Napier left his truck with the engine running and the transmission in neutral. He set the hand brake but failed to set the parking brake.[2] He also failed to turn the wheels toward the adjacent berm to prevent the vehicle from rolling down the slope toward the concrete block structure. The Mack truck was owned by James Long Trucking and was covered by a liability insurance policy issued by Progressive Insurance Company.[3]

Several minutes after Napier parked the coal truck, it rolled into the concrete block building, demolishing it and killing Donald and another person. An accident investigation by the Federal Mine Safety and Health Administration concluded that the

1. The trial court's order entered January 17, 2007, granting partial summary judgment to the Appellee referenced both UM and UIM coverage; however, the final judgment entered January 7, 2008, referenced only UM coverage. As read together, we construe the trial court's orders as awarding a $50,000.00 judgment to the Estate pursuant to whichever provision would be applicable.

2. Following the accident Napier gave a statement in which he claimed to have set the parking brake. For purposes of this litigation the parties stipulate that the accident "oc-

curred as a result of the negligent failure of the operator of the haul truck to set the parking brake and turn the wheels toward the burm [sic] when leaving the truck parked, and utilizing only the hand brake."

3. Appellee notes that the applicability of coverage under the Progressive policy has not been determined. We agree, but we conclude that the applicability of the policy is not material under the circumstances now before this Court.

cause of the accident was Napier's negligence in parking the truck.[4]

Donald's wife, Carlene, was appointed Administratrix of his estate. The parties stipulate that Donald's death occurred during the course of his employment and that the accident was covered by the Kentucky Workers' Compensation Act, KRS Chapter 342. Carlene sought and received all workers' compensation benefits to which she was entitled from James Long Trucking's workers' compensation carrier.[5] Because of KRS 342.690(1), the exclusive remedy provision of the Workers' Compensation Act, the Estate could not directly assert a wrongful death claim against Napier.

At the time of his death, Donald had an automobile insurance policy issued by State Farm which covered his personal vehicle. The State Farm policy had both UM and UIM provisions, each with a $50,000.00 per person coverage limit. However, when the Estate sought payment under these provisions, State Farm denied the claim on the grounds that the policy language limited the UM and UIM liability to damages that the Estate was "legally entitled to collect" from the owner or operator of an uninsured or underinsured motor vehicle and KRS 342.690(1) eliminated the Estate's legal entitlement to collect any damages from either the employer or a co-worker in excess of the workers' compensation benefits paid on account of Donald's death.

After denial of its claim, the Estate filed suit against State Farm in Knox Circuit Court seeking payment of the UM policy limits (if the truck was determined to be uninsured)[6] or the UIM policy limits (if the truck was determined to be underinsured). The Estate eventually filed a motion for partial summary judgment on the issue of coverage under the policy. The circuit court entered an order granting the Estate partial summary judgment on two issues. First, the circuit court held that the insurance policy contained both UM and UIM coverage and that Donald was covered by the policy at the time of the accident. Second, citing *Philadelphia Indemnity Ins. Co. v. Morris*, 990 S.W.2d 621 (Ky.1999), the court held that the exclusive remedy provisions of the Workers' Compensation Act did not bar the Estate from asserting a claim against State Farm under the policy. State Farm appealed that decision; however, the Court of Appeals dismissed this initial appeal as interlocutory because the circuit court had made no finding concerning damages.

The parties then entered into an Agreed Stipulation of Facts which provided, among other things, that "[t]he policy maintained uninsured motorist's coverage with limits of $50,000.00 per person[,]" and "[s]hould coverage be applicable, the amount of damages sustained by the Plaintiff Estate meet [sic] the $50,000.00 limit for uninsured motorist's coverage under

---

**4.** The Mine Safety and Health Administration conducted the lead investigation because the accident occurred at a coal mining site.

**5.** Because of the exclusive remedy provisions of the Workers' Compensation Act, KRS 342.690(1), no claim was pursuable against the liability carrier on the truck, Progressive Insurance Company. The record does not disclose the results of any claim by the workers' compensation carrier against Progressive Insurance, nor is this relevant to our review.

**6.** The Estate's theory that the vehicle may be deemed "uninsured" or "underinsured" derives from the fact that, although the truck was covered by a policy issued by Progressive Insurance at the time of the accident, the policy was essentially a nullity because performance under the policy was excused by the exclusive remedy provisions of the Workers' Compensation Act.

the State Farm policy."[7]

On January 7, 2008, the circuit court entered a $50,000.00 judgment against State Farm based upon its "review of the Stipulation of Facts entered by and between the parties hereto and the Court having previously entered an order addressing the coverage issue for uninsured motorist's coverage on January 17, 2007 and finding such coverage under the State Farm policy in existence. . . ." Thus, the Stipulation of Facts and the circuit court's order of January 7, 2008, referenced only UM coverage; neither mentioned UIM coverage. Again, however, we construe the circuit court's orders as holding that the Estate is entitled to a $50,000.00 recovery under whichever of the two provisions may be applicable.[8]

Following entry of the January 7, 2008 Judgment, State Farm again appealed to the Court of Appeals. The Court of Appeals affirmed the circuit court, although on different grounds. In concluding the exclusive remedy provisions of the Workers' Compensation Act did not apply, the Court of Appeals used the "essential facts" approach contained in *U.S. Fidelity and Guar. Co. v. Preston,* 26 S.W.3d 145 (Ky. 2000) and *Nationwide Mutual Insurance Co. v. Hatfield,* 122 S.W.3d 36 (Ky.2003).

Using this approach, the Court of Appeals concluded that to recover UM or UIM benefits an insured need only prove: (1) the fault of the uninsured or underinsured motorist; and (2) the extent of damages caused by the uninsured or underinsured motorist.[9] The court concluded that since the parties had stipulated to both Napier's negligence in causing the accident and damages sufficient to consume the $50,000.00 UM or UIM coverage limit, the Estate was entitled to summary judgment upon its claim for recovery under either the UM or UIM provisions of the policy. We accepted discretionary review to examine an insured's entitlement to UM or UIM coverage when he is injured by a co-worker in a work-related motor vehicle accident and, because of the exclusive remedy provisions of the Workers' Compensation Act, is not legally entitled to collect any further amounts from either his employer or co-worker.

## ANALYSIS

■ State Farm argues that the plain language of the policy, the exclusive remedy provisions of the Workers' Compensation Act, and applicable case authorities compel the conclusion that it has no liability under either the UM and UIM provi-

---

7. The stipulation refers only to *uninsured* motorist coverage, not *underinsured* coverage. However, the stipulation is to the *amount* of damages and reason dictates that if the amount of damages meets the $50,000.00 UM limit, it likewise meets the same UIM limit.

8. State Farm suggests the circuit court's orders should be interpreted to have found for the Estate solely under the UM provision, and that coverage under that provision is the only issue before this Court. It maintains that coverage under the UIM provision remains to be litigated in circuit court. However, the January 17, 2007 order clearly awarded summary judgment under the UIM provision as well as the UM provision, and we accordingly reject State Farm's interpretation.

9. State Farm asserted the argument before the Court of Appeals that recovery under the UM provision of the State Farm policy was barred because there was a liability policy on the truck. The Court of Appeals declined to address the argument on the grounds that it was insufficiently preserved by State Farm's failure to raise the argument to the circuit court or list it as an issue on its prehearing statement. State Farm again raises this issue before us, and the Estate has moved to strike the arguments from the Appellant's brief. As further discussed herein, we do not rely on this argument in reaching the merits of this case, and by separate order we have denied the Estate's motion to strike.

sion. For the reasons discussed below, we agree.

 Donald's State Farm policy includes the following provision governing entitlement to UM and UIM coverage: "We will pay compensatory damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured [underinsured] motor vehicle." [10] As a general rule, the construction and legal effect of an insurance contract is a matter of law for the court. *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky.1992). While "it [is] clear that ambiguous language must be liberally construed so as to resolve all doubts in favor of the insured … where not ambiguous, the ordinary meaning of the words chosen by the insurer is to be followed." *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky.2007). "Or stated another way, words which have no technical meaning in law, must be interpreted in light of the usage and understanding of the common man." *Id.*

Stating that "in 1999 our Supreme Court addressed this very issue," the trial court relied upon *Morris*, 990 S.W.2d 621, for the proposition that "KRS 342.690 has been found to not bar the way when an employee seeks underinsured/uninsured motorist benefits that exceed his or her workers' compensation award." However, *Morris* is distinguishable from this matter because there the tortfeasor was a third party, not a co-worker protected from liability by our workers' compensation law. The exclusive remedy provisions of Chapter 342 were not involved there. Similarly, *G & J Pepsi–Cola Bottlers, Inc. v. Fletcher*, 229 S.W.3d 915 (Ky.App.2007), cited by the Court of Appeals for the rule that an

injured employee who receives workers' compensation benefits has a right to seek additional coverage under both his own UIM policy and his employer's, is distinguishable for the same reason—the tortfeasor in that case also was not a fellow employee.

The Court of Appeals found the phrase "legally entitled to collect" to be ambiguous when considered in the context of the statutory immunity from liability as provided under KRS 342.690(1). *See Preston*, 26 S.W.3d 145; and *Hatfield*, 122 S.W.3d 36. To resolve the perceived ambiguity, it resorted to the "essential facts" approach from *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895, 899 (Ky.1993) which holds:

> UM coverage and UIM coverage are treated coextensively in many standard insurance policies, and in some cases are offered as a combined coverage. In both, proof that the offending motorist was at fault and proof of the amount of damages caused by the offending motorist are not preconditions to coverage, but only essential facts that must be proved before the insured can recover judgment in a lawsuit against the insurer on the contract of insurance.

Contract language, like statutory language, may be clear on its face and yet contain a latent ambiguity. *Thornhill Baptist Church v. Smither*, 273 S.W.2d 560, 562 (Ky.1954); *see also Carroll v. Cave Hill Cemetery Co.*, 172 Ky. 204, 189 S.W. 186, 190 (1916) ("A latent ambiguity is one which does not appear upon the face of the words used, and it is not known to exist until the words are brought in contact with the collateral facts.") As explained further below, under facts peculiar to each case, the contract language in

---

**10.** The UM statute, in KRS 304.20–020(1), uses similar language, that is, "legally entitled to recover…."

*Preston* ("legally entitled to recover") and *Hatfield* ("a legal right to recover") exposed a latent ambiguity when confronted with applicable laws of foreign jurisdictions that reflected public policies of those jurisdictions sharply at odds with Kentucky law. However, when the interplay between the policy language now before us and the exclusive remedy provisions of the Workers' Compensation Act is examined, we find no ambiguity in the policy language, and we can find no construction of such language that would support a conclusion that the Estate was "legally entitled to collect" any amounts from either the owner of the vehicle, James Long Trucking, or its driver, Napier, over and above the workers' compensation benefits already awarded under the Act.

The exclusive remedy provision of the Kentucky Workers' Compensation Act, which is contained in KRS 342.690, provides as follows:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death.... The exemption from liability given an employer by this section shall also extend to such employer's carrier and to all employees, officers or directors of such employer or carrier....

▆▆▆ "Essentially, the exclusive remedy provision grants immunity for liability arising from common law and statutory claims, meaning such claims cannot be pursued in the courts of this Commonwealth." *Kentucky Employers Mut. Ins. v. Coleman*, 236 S.W.3d 9, 13 (Ky.2007).

The effect of this statute is that "KRS 342.690(1) and its predecessor statute shield a covered employer and its insurer from any other liability to a covered employee for damages arising out of a work-related injury." *Id.* (quoting *Travelers Indemnity Co. v. Reker*, 100 S.W.3d 756, 760 (Ky.2003)). "[T]he exemption from liability granted to an employer by KRS 342.690(1) is also extended to all employees of the employer." *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 464 (Ky.1986).

As the above authorities demonstrate, except for the workers' compensation benefits that have already been awarded pursuant to KRS Chapter 342, the Estate is not now, nor will it ever be, "legally entitled to collect" any further amounts from either James Long Trucking or Napier. Since the contractual language of the State Farm policy affords payment of UM or UIM benefits only for "bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured [underinsured] motor vehicle," under the facts of this case, the Estate may not collect under its UM or UIM coverage.

While the Court of Appeals determined that the policy language was ambiguous, its declaration to that effect was conclusory, and it identified no alternative interpretation of the language. The two decisions upon which it principally relied to find ambiguity in the State Farm policy language are *Preston*, 26 S.W.3d 145 and *Hatfield*, 122 S.W.3d 36. However, in each of those cases the legal bar to recovery against the third-party tortfeasor was the application of foreign law to a Kentucky resident claiming coverage under a Kentucky-issued policy of UM or UIM insurance. In *Hatfield*, Missouri's sovereign immunity law prevented further recovery from the tortfeasor, a Missouri municipal fire department employee. In *Preston*,

Georgia's comparative negligence law prevented recovery by the sixty-percent at fault plaintiff from the forty-percent at fault tortfeasor. Thus, in those cases, the laws of foreign jurisdictions which barred recovery where Kentucky law would allow recovery exposed the latent ambiguity of the insurance policy language. In *Preston*, did "legally entitled to recover" mean "legally" under Georgia law or "legally" under Kentucky law? In *Hatfield*, did "a legal right to recover" mean "legal" under Missouri law or "legal" under Kentucky law?

In both *Preston* and *Hatfield* we interpreted a Kentucky insurance policy issued to a Kentucky resident as being consistent with Kentucky law, and we refused to subordinate Kentucky public policy to the conflicting public policy of another state. Central to the *Preston* decision was our recognition that "[l]aws unique to other jurisdictions, e.g., regarding statutes of limitations, interspousal immunity, *workers' compensation*, and comparative or contributory negligence, should not bind and define the public policy of Kentucky." *Preston*, 26 S.W.3d at 147–148 (emphasis added). In the present matter, Kentucky public policy is expressed in KRS 342.690(1), and we are not confronted with the law of a foreign jurisdiction that conflicts with that Kentucky policy. Our decision in this case is not inconsistent with our holdings in *Hatfield* and *Preston*.[11]

The conclusion we reach is also consistent with the conclusion reached by the majority of other jurisdictions that have considered the issue. *See* John P. Ludington, Annotation, *Automobile Uninsured Motorist Coverage: "Legally Entitled to Recover" Clause as Barring Claim Compensable Under Workers' Compensation Statute*, 82 A.L.R. 4th 1096 § 6(a) (1990) ("[A]n employee is not entitled to uninsured motorist benefits under his or her own automobile insurance policy for injuries resulting from a coemployee's [sic] negligent operation of a motor vehicle, because an uninsured motorist carrier is liable only for the damages which an insured is legally entitled to recover' from owners or operators of uninsured motor vehicles, and the workers' compensation law grants immunity from suit to a co-employee for injuries compensable by workers' compensation benefits.")[12]

11. Because the policy provision under review is not ambiguous, reference to the essential facts approach was unnecessary. We note, however, that in its application of the essential facts approach, the Court of Appeals appears to have synthesized a rule whereby to recover under the essential facts approach, the insured need only prove: (1) the fault of the uninsured or underinsured motorist, and (2) the extent of damages caused by the uninsured or underinsured motorist. However, this abridgment of the rule fails to properly consider an individualized analysis of a particular policy's language and its interplay with statutory public policy exemptions to tort liability, such as the exclusive remedy provisions of the Workers' Compensation Act. Under the essential facts approach, a third step would be required. Assuming contractual language similar to the provisions under consideration, a review to discover any applicable statutory bar to the plaintiff's entitlement to collect from the tortfeasor(s) would be necessary. Upon application of this step, the Estate is not entitled to collect under the essential facts approach.

12. While some of the policies examined in other jurisdictions use the language "legally entitled to recover" and "amounts due," we discern no difference between that phrasing and the wording "legally entitled to collect." Cases cited-include: *Allstate Ins. Co. v. Boynton*, 486 So.2d 552 (Fla.1986) (a mechanic injured by a car on which his co-employee was working was held not entitled to recover under his own uninsured motorist policy because of the co-employee's immunity from suit); *Ex parte Carlton*, 867 So.2d 332 (Ala. 2003) (employee injured as a passenger in a vehicle driven by a co-employee was, under Workers' Compensation Act, not legally enti-

In summary, for the reasons explained, we are constrained to conclude that both the trial court and Court of Appeals erred in their holdings that the Estate was entitled to collect benefits under either the UM or UIM provisions of the State Farm policy.

## CONCLUSION

For the foregoing reasons the judgment of the Court of Appeals is reversed, and the cause is remanded to the Knox Circuit Court for entry of a judgment in favor of State Farm.

All sitting. All concur.

tled to recover from owner or operator of uninsured vehicle, for purposes of uninsured motorist statute, and, therefore not entitled to UM benefits under his insurance policy); *Wachtler v. State Farm Mut. Auto. Ins. Co.*, 835 So.2d 23 (Miss.2003) (insured was not "legally entitled to recover" from co-employee driving truck that struck insured and, therefore, was not entitled to UM benefits under personal automobile policies; the exclusive remedy provision of the Workers' Compensation Act barred recovery from co-employee); *Williams v. Thomas*, 187 Ga.App. 527, 370 S.E.2d 773 (1988) (an employee who suffered an on-the-job injury when struck by a motor vehicle owned by his employer and operated by his co-employee while in the scope of employment, and for which the employee was awarded workers' compensation benefits, held not entitled to recover uninsured motorist benefits under his own automobile insurance policy); *Williams v. Country Mut. Ins. Co.*, 28 Ill.App.3d 274, 328 N.E.2d 117 (1975) (collision between two employees' automobiles on their employer's premises in the course of employment, was within the purview of the state workers' compensation law; the injured employee's sole recourse was under the workers' compensation statute, and there was no coverage under the injured employee's UM coverage, even though the co-employee was uninsured); *Lee v. Allstate Ins. Co.*, 467 So.2d 44 (La.App.1985) (employee injured in an automobile accident caused by co-employee held not entitled to recover from his co-employee's insurer or from his own UM carrier as both insurers were entitled to avail themselves of the exclusive remedy provision of the state workers' compensation statute.).